# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARCIA L. FLAGLER,

                        Plaintiff,

-vs-                                                    Case No.  6:06-cv-262-Orl-22KRS

BRIDGES OF AMERICA, INC.,

                        Defendant.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT BRIDGES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 34)** |
| **FILED:** | **February 2, 2007** |

## I.    PROCEDURAL HISTORY.

      This case arises from a dispute regarding whether Defendant Bridges of America, Inc. ("Bridges") violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, in failing to promote Plaintiff Marcia L. Flagler because of her race.[1]

---

[1] The Renewed Amended Complaint includes three counts: racial discrimination in violation of Title VII; age discrimination in violation of the Age Discrimination in Employment Act; and racial discrimination in violation of § 1981.  Doc. No. 26.  The age discrimination claim was dismissed by the Court.  Doc. No. 31.

Bridges filed a motion for summary judgment on both counts.  Doc. No. 34.  In support of the motion, it submitted a memorandum of law, and the following documents:

- Excerpts of the Deposition of Marcia Flagler (Flagler Dep.);

- Affidavit of Vickie Blackwell (Blackwell Aff.);

- Excerpts of the Deposition of Charles Brown (Brown Dep.);

- Bridges of America Program Director Job Description;

- Modified Job Duties Document;

- Excerpts of the Deposition of Linda Hites (Hites Dep.);

- Bridges of America Executive Director Job Description;

- Hites' Employment Application and Resume;

- Excerpts of the Deposition of Vickie Blackwell (Blackwell Dep.);

- Letter from Blackwell to Flagler;

- Excerpts of the Deposition of Mary Karp (Karp Dep.);

- Karp's Employment Application and Resume;

- Flagler's Resume; and

- Flagler's Performance Evaluation.

Doc. No. 34 (see exhibit index at doc. no. 34-2).[2]

Flagler filed a memorandum in opposition to the motion.  Doc. No. 42.  In support of her response, Flagler submitted her own affidavit.  Doc. No. 42-2 (Flagler Aff.).

---

[2]  I will cite to the internal pagination of the deposition excerpts.

The Honorable Anne C. Conway, presiding district judge, referred the motion to me for issuance of a Report and Recommendation.  Doc. No. 37.

## II.      STATEMENT OF FACTS.

Bridges operates treatment facilities for adults who have been ordered to undergo substance abuse treatment by the Department of Corrections, including facilities in Orlando and Sanford, Florida, and other locations.  Blackwell Aff. ¶ 2.  Flagler (who is African-American) was hired as a Program Director[3] at the Sanford facility in April 2003.[4]  Renewed Amended Complaint, Doc. No. 26 ¶ 7; Answer, Doc. No. 27 ¶ 7; Flagler Dep. at 112.  Flagler had a masters degree in mental health counseling, was a doctoral candidate in a counseling program, and was a Certified Addiction Professional and Registered Mental Health Counselor Intern.  Flagler Resume, doc. no. 34-15.  She had supervisory experience.  *Id*.; Flagler Aff. ¶ 20.  Flagler was hired by Phyllis Harris (who is African-American), the Executive Director of the Sanford facility, and worked under her until Harris' termination in August 2004.  Flagler Dep. at 40, 89; Flagler Aff. ¶ 7.

After being hired, Flagler spoke with Charles Brown, the Vice President of Programs (who is African-American) about opportunities for promotions.  Brown Dep. at 22; Flagler Aff. ¶ 8; *see also* Flagler Dep. at 40 (indicating Flagler "checked periodically" to see if there were available promotions).  Brown told Flagler that Bridges preferred to promote from within the organization.

---

[3]  The program director position requires a minimum of: "B.A. in Behavioral/Social Science with a working knowledge of criminal justice processes and Certified Addictions Professional" certification, with four years of experience in chemical dependency programs, and, preferably, two years of criminal justice experience and two years of supervisory experience.  Doc. No. 34-6.

[4]  Blackwell erroneously states the date as April 2004, Blackwell Aff. ¶ 4, but the exhibits to her affidavit correctly reflect that Flagler began work in April 2003.

Brown Dep. at 22-23; *see also* Blackwell Dep. at 16; Flagler Aff. ¶ 13 ("I was told that [Bridges] hired from within before going outside."). However, this is not a formal policy. Brown Dep. at 22-23.

In October 2003, Flagler was injured at work and took approved leave from October 26 through November 19, 2003. Blackwell Aff. ¶ 5;[5] Flagler Aff. ¶ 11.

In December 2003, Brown and human resources developed a modified position description so that Flagler could work a part-time schedule that would accommodate her doctoral studies. Flagler Aff. ¶ 12; Brown Dep. at 23-24; Blackwell Aff. ¶ 6; doc. no. 34-7 (modified duties). Flagler began the part-time schedule in January 2004. Blackwell Aff. ¶ 6; Flagler Dep. at 117. She completed a residency program in July 2004, and returned to full-time work in August 2004. Flagler Dep. at 118.

Between late January and mid-April 2004, Flagler took leave under the Family and Medical Leave Act (FMLA). Blackwell Aff. ¶ 5; Flagler Aff. ¶ 11; Flagler Dep. at 117; *see also* Flagler's Performance Evaluation, doc. no. 34-16 (indicating that prior to taking FMLA leave, Flagler had problems with attendance and punctuality).

In late June or early July 2004, Marty Ford, the Executive Director of the Orlando facility, abruptly resigned. Brown Dep. at 27. This created an urgent need for a replacement. *Id*. at 28. There was no formal job posting for Ford's position, and Flagler did not apply for the position. Flagler Dep. at 155; Flagler Aff. ¶¶ 17, 22. However, Flagler avers she would have applied had there been a formal job notice. *Id*.

---

[5] Blackwell erroneously lists the date of injury as October 2004.

Linda Hites (who is Caucasian), had been an executive director at one of Bridges'

facilities, but  was laid off when Bridges lost a large contract.  Hites Dep. at 13; Brown Dep. at 27,

50; Flagler Aff. ¶ 15.  Hites had an associates degree and was a Certified Addiction Professional.

Hites Resume, doc. no. 34-10; *see also* Flagler Dep. at 61 (Flagler knew that Hites had worked as

an executive director).[6]  Hites often contacted Brown to see if there were positions available with

Bridges.  Hites Dep. at 13; Brown Dep. at 27-28.  Brown initially offered Hites a program director

position at the Auburndale facility, but then the executive director position in Orlando became

available.  Brown Dep. at 50.  Based on her previous experience as an executive director, Hites

was offered, and accepted, the position.  *Id.*[7]

Brown admitted that this hiring was done outside the normal procedure, but believed it was

appropriate given the unusual and urgent situation.  Brown Dep. at 28.  Flagler complained about

not being considered for the position, and Brown "told [her] that [she] didn't rub elbows with

enough people."  Flagler Dep. at 88.  Flagler perceived this as a comment that she did not mingle

enough with managers, most of whom are Caucasian.  *Id.* at 88-89.

On August 6, 2004, Harris was discharged as Executive Director of the Sanford facility.

Blackwell Aff. ¶ 7.  The same day, after speaking with Pat Madouse, Vice President of Operations

---

[6]  The executive director position requires a "Masters Degree in Human Services and/or Certified Addiction Professional" with "at least 4 years of experience with addictions treatment programs and 2 years of experience providing treatment service for criminal justice clients."  Doc. No. 34-9.  It is the director of a particular facility and involves a number of high-level supervisory functions.  *Id*.

[7]  Flagler avers that Harris told her that the Orlando executive director position was initially offered to Marianne McKenzie (who is Caucasian), another program director with Bridges, but that McKenzie declined the position.  Flagler Aff. ¶¶ 21-22; Flagler Dep. at 118.  Flagler was not asked if she was interested in the position.  Flagler Aff. ¶¶ 21-22.

(who is Caucasian), Flagler submitted a letter of interest regarding the position.  *Id.*; Blackwell

Dep. at 16; Flagler Aff. ¶¶ 14,  23.[8]

Vickie Blackwell, the Director of Human Resources, reviewed Flagler's file and resume.

Blackwell Aff. ¶ 8; Blackwell Dep. at 16.  Based on a lack of clinical supervisory experience in

her resume, Blackwell determined that Flagler was not qualified for the position.  Blackwell Aff. ¶

9.  Additionally, "[b]ecause [Flagler] had so many absences, it was difficult for her to specifically

learn her position, and to learn the Bridges programs in general." *Id.* ¶ 5; *cf.* Brown Dep. at 56;

Flagler's Performance Evaluation, doc. no. 34-16  (indicating that in addition to the leaves of

absence discussed, Flagler also had other attendance problems including some unexcused

absences).

Blackwell advised Brown of Flagler's letter of interest, and Brown independently

considered whether Flagler was qualified for the position.  Blackwell Aff. ¶ 8.  Brown did not

believe Flagler was capable of exercising the duties of an executive director.  Brown Dep. at 45.

Based on Hites' recommendation, Brown approached Mary M. Karp about the Sanford

Executive Director position.  Karp Dep. at 24.  Karp (who is Caucasian), had previously worked at

Bridges, had a masters degree in counseling, and was a Certified Addictions Professional, a

licensed mental health counselor, a certified clinical hypnotherapist, and a fellow of the American

Board of Managed Care Providers.  *Id.* at 6-7; Karp Resume, doc. no. 34-14; Flagler Aff. ¶ 15; *see*

*also* Flagler Dep. at 61 (Flagler acknowledged that Karp was qualified for the position).

---

[8]  According to Flagler, Madouse "handled all administrative issues including the transition
from on[e] Executive Director to another.  Ms. Madouse . . . made it very clear verbally, that she
was in charge . . . [and] addressed executive level personnel issues directly, and indirectly."
Flagler Aff. ¶ 14.  It is unclear how Madouse relates to the other decisionmakers in Bridges.

While Karp did not recall the process entirely, she was interviewed over the telephone and offered the position. Karp Dep. at 8. She did not have a sit-down meeting until after she was hired. Karp Dep. at 26. Karp began working on August 9, 2004. Karp. Dep. at 8.

On August 10, 2004, Blackwell wrote Flagler a letter. Letter from Blackwell to Flagler, doc. no. 34-12. In this letter, Blackwell indicated that "during your employment you have had an extended leave of absence and have been working part time for several months. As a result we have not had ample opportunity to evaluate your ability to be promoted to the position of Executive Director." The letter stated that Flagler could apply for future promotions to executive director. "Hopefully, by that time you will have returned to full time work long enough to be evaluated for your possible consideration for that position." *Id.*

In October 2004, Flagler took approved leave. Flagler Dep. at 118 (indicating leave was for carpal tunnel related issues). On November 4, 2004, Flagler resigned her position as a program director at the Sanford facility. Blackwell Aff. ¶ 10. Her resignation was accepted on November 10, 2004, following the completion of her leave of absence. *Id.*[9]

The parties dispute whether Flagler was qualified for the position of program director. Flagler testified that she was overqualified for the program director position, and that Brown had repeatedly told her that she was overqualified. Flagler Dep. at 112; Flagler Aff. ¶¶ 13, 20. Brown

---

[9] Flagler avers that Karp "left a note on my desk asking me for a date of resignation. This made me feel that if I didn't give a date as requested, I would be subjected to more hostile situations than I had already been subjected to." Flagler Aff. ¶ 28. She also avers that she had various conflicts with Karp. *Id.* Additionally, "[a]fter reporting the incident to the Corporate office, and filing the discrimination complaint, I experienced a hostile work environment." *Id.* Because Flagler has not brought a claim for hostile work environment or wrongful termination under Title VII, it is unclear how these statements are relevant to the failure to promote claim.

testified that Flagler's resume "was pretty weak because [Flagler] didn't have any clinical supervision experience, but . . . did have the necessary certification . . . to be a qualified supervisor." Brown Dep. at 21. Flagler "barely made it" with regard to the program director position. *Id*. at 46.

The parties also dispute whether Brown advised Flagler that she did not have sufficient supervisory experience for the executive director position. Flagler avers that "[a]t no time did Mr. Brown ever tell me that I needed to develop my supervisory skills. . . . At no time did Mr. Brown or [Harris] ever state that there were areas in which I needed to improve in order to develop as a supervisor. To the contrary, Phyllis Harris, constantly gave me the opportunity to utilize my Executive Director skills." Flagler Aff. ¶ 13. Indeed, Flagler avers that Harris "utilized [her] skills to assist . . . in many Executive Director duties and responsibilities." *Id*. ¶ 10.

Brown, on the other hand, testified that when Flagler inquired about the possibility of being promoted, he "even gave [Flagler] some specific things . . . to do. I asked her to get with Phyllis Harris and to try to learn as much as she could about being a director administratively so that [Flagler] could position herself" for future opportunities. Brown Dep. at 44-45. When Brown followed-up with Harris, Harris indicated that Flagler "was not responding to that and that [Harris] didn't, somehow or another [Harris] didn't feel like [Flagler] was up to the task." *Id*. at 52.

## III.    STANDARD OF REVIEW.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." The Supreme Court explained the rule as

follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after
> adequate time for discovery and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an element essential to that party's
> case, and on which that party will bear the burden of proof at trial. In such a
> situation, there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the nonmoving party's case
> necessarily renders all other facts immaterial. The moving party is "entitled to
> judgment as a matter of law" because the nonmoving party has failed to make a
> sufficient showing on an essential element of her case with respect to which she has
> the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The Court must consider all inferences

drawn from the underlying facts in a light most favorable to the party opposing the motion, and

resolve all reasonable doubts against the moving party. . . . If material issues of fact exist, the

Court must not decide them, but rather, must deny the motion and proceed to trial." *Kitchings v.

Fl. United Methodist Children's Home, Inc*., 393 F. Supp. 2d 1282, 1291 (M.D. Fla. 2005)

(internal citations omitted).

"'Genuine disputes are those in which the evidence is such that a reasonable jury could

return a verdict for the non-movant.  For factual issues to be considered genuine, they must have a

real basis in the record.' . . .  For instance, mere conclusions and unsupported factual allegations

are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321,

1325-26 (11th Cir. 2005)(quoting *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.

1996)).

IV.     **ANALYSIS.**

        *A.     Title VII and § 1981.*

        Title VII provides, in relevant part, as follows:

        It shall be an unlawful employment practice for an employer –

        [T]o fail or refuse to hire or to discharge any individual, or otherwise to
discriminate against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such individual's race, color,
religion, sex, or national origin . . . .

42 U.S.C. § 2000e-2(a).

        Section 1981, in turn, provides as follows:

        All persons within the jurisdiction of the United States shall have the same right in
every State and Territory to make and enforce contracts . . . as is enjoyed by white
citizens . . . . For purposes of this section, the term "make and enforce contracts"
includes the making, performance, modification, and termination of contracts, and
the enjoyment of all benefits, privileges, terms, and conditions of the contractual
relationship.

42 U.S.C. § 1981(a) – (b).

        While there are differences between claims under Title VII and claims under § 1981, the

United States Court of Appeals for the Eleventh Circuit has held that in employment cases

involving alleged racial discrimination, Title VII and § 1981 have "the same requirements of proof

and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330

(11th Cir.1998).  Accordingly, courts routinely address Title VII "with the understanding that the

analysis applies to the § 1981 claim as well."  *Id.*

        A claim for failure to promote raises issues of disparate treatment.  *Vessels v. Atlanta*

*Indep. Sch. Syst.*, 408 F.3d 763, 767 (11th Cir. 2005).  Accordingly, such claims "require proof of

discriminatory intent."  *Id.*  In order to prove her case under Title VII, "a plaintiff may use three

different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard*, 161 F.3d at 1330.

Claims of circumstantial evidence are addressed "[u]nder the familiar *McDonnell Douglas* framework." *Vessels*, 408 F.3d at 767 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this framework, the plaintiff first has the burden of making out a prima facie case; if she does, the burden shifts to the employer to articulate a non-discriminatory basis for the employment action; once the employer does so, "the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual." *Id.* (internal citations omitted).

The parties agree that this is a case of circumstantial evidence in which the *McDonnell Douglas* framework applies. *See* Doc. No. 34 at 9; Doc. No. 42 at 4 ("In the instant case, Plaintiff relies upon circumstantial evidence to prove discriminatory intent . . . .").

B.     *Flagler's Prima Facie Case.*

"In order to establish a prima facie case, and thus raise an inference of discriminatory intent, the plaintiff must demonstrate only that: (i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class." *Vessels*, 408 F.3d at 768.[10] "[W]here an employer does not formally

---

[10]  Some panels of the Eleventh Circuit have defined the fourth part of the prima facie case "as including a requirement that the plaintiff show that the employee who received the promotion was equally or less qualified than the plaintiff." *Ferguson v. Ga. Dept. of Corrections*, 428 F. Supp.2d 1339, 1355 n.21 (M.D. Ga. 2006) (collecting cases). For the reasons discussed in *Ferguson*, the Court follows the earliest panel decision, which requires only that the plaintiff show that the position was filled by someone outside the protected class. *Id.*

announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position–only that the employer had some reason to consider him for the post." *Vessels*, 408 F.3d at 768 (citing *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir. 1992)).

There is no dispute as to most of the factors of the prima facie case. Flagler is African-American. She frequently inquired about promotions and submitted a letter seeking the Executive Director position filled by Karp. She was not hired for either of the vacant executive director positions. Finally, both executive director positions were filled by Caucasian women.

Disputed issues of fact exist with respect to whether Flagler was qualified for the executive director position. As reviewed above, Flagler had the requisite education and certification, and she had experience providing treatment services for criminal justice clients. Flagler attests that Brown told her that she was qualified for the position, but Brown denies making this statement. Accordingly, the evidence is sufficient to survive summary judgment on the question of whether Flagler can establish a prima facie case of discrimination.

C.     *Bridges' Non-Discriminatory Basis for Its Employment Decisions.*

The Eleventh Circuit has observed that an employer's "burden to articulate a non-discriminatory reason for failing to promote an employee is a burden of production, not of persuasion. As this burden involves no credibility determination, it has been characterized as exceedingly light." *Vessels*, 408 F.3d at 769-70 (internal quotations and citations omitted). Accordingly, "[s]o long as the employer articulates 'a clear and reasonably specific' non-discriminatory basis for its actions, it has discharged its burden of production." *Id*. at 770 (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). An employer's non-

discriminatory justification may be based on subjective evaluations so long as they are clear and reasonably specific.  *Id*. at 770-71 (citing *Chapman v. AI Transp.*, 299 F.3d 1012, 1034-35 (11th Cir. 2000) (en banc)).

As its non-discriminatory reason for its decision to select another candidate for the executive director positions, Bridges points to the fact that Flagler worked a part-time schedule and had numerous absences, both approved and unapproved.  Accordingly, Flagler had not had time to learn her position sufficiently or Bridges' programs, and Bridges had not had sufficient time to evaluate her for an executive director position.  Bridges also presented evidence that Blackwell and Brown concluded that Flagler did not have sufficient experience, particularly in supervisory positions, for the executive director job.  Further, Bridges showed that Hites had previous experience as an executive director at Bridges, and that Karp had professional licenses not possessed by Flagler.  This evidence is sufficient to fulfill Bridges' burden of articulating a legitimate, non-discriminatory reason for failing to promote Flagler to an executive director position.

      D.    *Whether the Stated Legitimate, Non-Discriminatory Reasons for the Decisions Were Pretextual.*

"Once the employer meets its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated.  To survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination."  *Vessels*, 408 F.3d at 771 (internal citations omitted).  The Eleventh Circuit emphasized that "[t]his evidence must reveal 'such weaknesses, implausibilities,

inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" *Id.* (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)).

"In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [race]." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (applying Title VII in sex discrimination context).

Flagler has not submitted any evidence to contradict Bridges' stated reasons for its decisions.  Rather, the record supports the facts underlying Bridges' stated reasons for not offering Flagler an executive director position: she had attendance problems while working at Bridges; the time to evaluate her work had been reduced by her absences and the modified duty schedule in place while she sought her graduate degree; and, Hites had prior experience in the executive director position and Karp had professional licenses not possessed by Flagler.

Accordingly, Flagler has not "come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels*, 408 F.3d at 771.  As such, Flagler has failed to satisfy her burden of showing that there is a genuine issue as to any material fact.  Inasmuch as Flagler has failed to rebut Bridges' non-discriminatory reason for not promoting her, Bridges is entitled to summary judgment in its favor.

**V.      RECOMMENDATION**.

For the reasons discussed in the foregoing report, I respectfully recommend that Defendant

Bridges of America's Motion for Summary Judgment, doc. no. 34, be **GRANTED**.

Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 14, 2007.

*Karla R. Spaulding*
                             KARLA R. SPAULDING
                             UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy